**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

| | |
|---|---|
| TYCO HEALTHCARE GROUP LP, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 9:06-CV-151 (KFG) |
| APPLIED MEDICAL RESOURCES CORP., | ) The Honorable Keith F. Giblin |
| Defendant. | ) **JURY TRIAL DEMANDED** |

**TYCO'S MOTION TO EXCLUDE APPLIED'S LATE-PRODUCED DOCUMENTS
AND RELATED EXPERT TESTIMONY**

## **TABLE OF CONTENTS**

**INTRODUCTION AND STATEMENT OF THE CASE** ..........................................................1

**UNDISPUTED MATERIAL FACTS** ........................................................................................2

**ISSUE PRESENTED** ..................................................................................................................3

**ARGUMENT** ................................................................................................................................3

    I.       This Court's Rules Require Parties To Fulfill Discovery Obligations In Accordance With The Case Scheduling Order ..........................................................3

    II.      The Exclusion Of Evidence Is A Proper Remedy For Applied's Failure To Comply With The Case Scheduling Order ..............................................................4

**CONCLUSION** .............................................................................................................................9

## TABLE OF AUTHORITIES

**Cases**

*Barrett v. Atlantic Richfield Co.*,
    95 F.3d 375 (5th Cir. 1996) .................................................................................... 3, 5, 6

*Betzel v. State Farm Lloyds*,
    480 F.3d 704 (5th Cir. 2007) ............................................................................................ 6

*Computer Acceleration Corp. v. Microsoft Corp.*,
    503 F. Supp. 2d 819 (E.D. Tex. 2007) ............................................................................. 3

*Duinninck Brothers, Inc. v. Howe Precast, Inc.*,
    No. 4:06-cv-441, 2008 WL 2625851 (E.D. Tex. June 27, 2008) ...................................... 9

*Finisar Corp. v. DirecTV Group, Inc.*,
    424 F. Supp. 2d 896 (E.D. Tex. 2006) ............................................................................. 3

*Geiserman v. MacDonald*,
    893 F.2d 787 (Fed. Cir. 1990) .......................................................................................... 3

*Grain Processing Corp. v. American Maize-Products Co.*,
    185 F.3d 1341 (Fed. Cir. 1999) .................................................................................... 7, 8

*Mars, Inc. v. Coin Acceptors, Inc.*,
    527 F.3d 1359 (Fed. Cir. 2008) ........................................................................................ 8

*Micro Chemical, Inc. v. Lextron, Inc*,
    317 F.3d 1387 (Fed. Cir. 2003) ........................................................................................ 8

*Monsanto Co. v. Bayer Bioscience N.V.*,
    No. 4:00-CV-01915, 2005 WL 5989796 (E.D. Mo. Oct. 28, 2005) .................................. 5

*Panduit Corp v. Stahlin Bros. Fibre Works, Inc.*,
    575 F.2d 1152 (6th Cir. 1978) ......................................................................................... 7

*Providence Property & Casualty Inc. Co. v. PeopLease Corp.*,
    No. 4:06-cv-285, 2007 WL 3390011 (E.D. Tex. Nov. 13, 2007) ...................................... 9

*Riles v. Shell Exploration & Production Co.*,
    298 F.3d 1302 (Fed. Cir. 2002) ........................................................................................ 7

*Shelak v. White Motor Co.*,
    581 F.2d 1155 (5th Cir. 1978) ......................................................................................... 3

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*,
    73 F.3d 546 (5th Cir. 1996) ............................................................................................. 4

*Texas A & M Research Foundation v. Magna Transportation, Inc.*,
    338 F.3d 394 (5th Cir. 2003) ........................................................................................... 4

*Texas Instruments, Inc. v. Hyundai Electronics Industries, Co.*,
    50 F. Supp. 2d 619 (E.D. Tex. 1999) ............................................................................... 5

**Other Authorities**

7-20 Chisum on Patents § 20.03[3][b][v] ................................................................................ 7

**Rules**

Fed. R. Civ. P. 16(b) ............................................................................................................... 8
Fed. R. Civ. P. 26(e) ............................................................................................................... 9

Plaintiff Tyco Healthcare Group LP ("Tyco") respectfully submits this Motion To Exclude Applied's Late-Produced Documents And Related Expert Testimony.

## **INTRODUCTION AND STATEMENT OF THE CASE**

Applied produced over 4,700 pages of documents between March 20 and June 20, 2008, well after the September 2007 close of fact discovery. Applied compounded the prejudice of this late production by having its experts rely on these documents in their June 20, 2008 rebuttal expert reports. Indeed, Applied withheld some of these documents until the same day its experts served their rebuttal expert reports.

This is exactly the type of "trial by ambush" that this Court's Patent Rules and scheduling orders are intended to prohibit. As this Court correctly noted, "[t]rial is less than four months away, and a continuance is not available to cure any prejudice Tyco might have suffered." (D.I. 127) Accordingly, Tyco respectfully requests that the Court exclude Applied's late-produced documents and related expert testimony.

Applied concedes that its production was well after the fact discovery deadline. Applied offers two excuses for its late production, but neither of them has any merit. First, Applied argues that it produced the documents as soon as it could have. But this argument is flatly contradicted by the facts, as many of the documents are dated well before they were produced. For the Court's convenience, a chart of exemplary information is attached hereto as Exhibit A.

Applied next argues that the late-produced documents are "vital" to its case and cannot be excluded. But this argument fails on multiple levels. For example, when Tyco requested production of documents regarding Applied's new trocar designs — the same category of documents at issue here — Applied argued that "any document concerning such trocars are *irrelevant* to Tyco's claims of infringement" and refused to produce them. (*See* Ex. B (emphasis

1

added)) Moreover, Applied has admittedly cherry-picked the late-produced documents from its research and development files, choosing to produce documents related to the product that went to market. (*See* D.I. 124) To the extent these documents are relevant to damages, so are Applied's withheld documents related to its other redesign attempts and failures. Applied's attempt to use selective, untimely productions to bolster its damages theories should be rejected.

For all these reasons, Tyco respectfully requests that this Court exclude Applied's late-produced documents and any related expert testimony.

## UNDISPUTED MATERIAL FACTS

1. Fact discovery closed on September 19, 2007. (D.I. 35; 44; 89; 101)

2. On July 25, 2007, the parties submitted a joint motion to extend certain scheduling order deadlines. (D.I. 88) This joint motion did not request an extension of the fact discovery deadline. (*See id.*)

3. Judge Clark granted the parties' July 25 motion, noting that "[t]his extension of time shall not serve as a basis for an extension of any other deadline." (D.I. 89)

4. Between March 20, 2008 and June 16, 2008, Applied produced approximately 2,658 additional pages of documents. (AP 44869-47526)

5. On June 20, 2008, Applied served six rebuttal expert reports, including a rebuttal report from damages expert Matthew Lynde. (*See* Ex. C)

6. Applied produced an additional 2,107 pages of documents (AP 47527-49633) on June 20, 2008.

7. Mr. Lynde relied on many of Applied's late-produced documents in his rebuttal expert report. (*See* Ex. C)

8.  When Tyco sought discovery of Applied's new trocar products in February and March 2008, Applied objected to producing the requested documents, which were the same category of documents at issue here.  (*See* Ex. B)

## ISSUE PRESENTED

Whether this Court should enforce its case scheduling order and exclude Applied's late-produced documents and all related expert testimony?

## ARGUMENT

**I.  This Court's Rules Require Parties To Fulfill Discovery Obligations In Accordance With The Case Scheduling Order**

The Federal Rules of Civil Procedure are designed to prevent "trial by ambush." *Shelak v. White Motor Co.*, 581 F.2d 1155, 1159 (5th Cir. 1978).  This Court's Patent Rules have the same goal.  *See Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007) ("The local patent rules exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush.") (citation omitted).

When faced with noncompliance with a scheduling order "[a] court has the inherent power to enforce its scheduling orders and to impose sanctions."  *Finisar Corp. v. DirecTV Group, Inc.*, 424 F. Supp. 2d 896, 899 (E.D. Tex. 2006).  Appropriate sanctions include the exclusion of evidence.  *See Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996) (affirming the exclusion of evidence as a remedy for a party's failure to comply with a scheduling order); *Geiserman v. MacDonald*, 893 F.2d 787, 790 (Fed. Cir. 1990).

This Court has considered the following factors in determining whether to exclude evidence or expert testimony as a sanction for a violation of a discovery order:

      1.    the prejudice to the opposing party of allowing the evidence in;

      2.    the possibility of curing such prejudice by granting a continuance;

      3.    the importance of the evidence or witness' testimony; and

      4.    the explanation, if any, for the party's failure to comply with the discovery order.

*See, e.g.*, *Tex. A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 572 (5th Cir. 1996). As discussed below, exclusion of Applied's late-produced documents and related expert testimony is both appropriate in light of these factors and essential to avoid trial by ambush.

## II. The Exclusion Of Evidence Is A Proper Remedy For Applied's Failure To Comply With The Case Scheduling Order

### A. Applied's Late Production Has Prejudiced Tyco

By waiting for months after the close of fact discovery to produce thousands of pages of documents related to its alleged non-infringing alternatives, Applied has severely prejudiced Tyco. The deadline for fact discovery was September 19, 2007. (D.I. 35) This date remained unchanged despite multiple amendments to the Scheduling Order. (*See* D.I. 44; 89; 101) Yet, between March 20 and May 21, 2008, Applied produced more than 2,300 pages of documents. (AP 44869-47193) On May 23 and June 20, 2008, the parties exchanged opening and rebuttal expert reports. Nonetheless, Applied's untimely productions continued, culminating in a 2,108-page production *on the same day* the parties exchanged rebuttal expert reports. (AP 47526-49633) Applied's assertion that these documents were "timely" produced is flatly contradicted by the examples in Exhibit A, which compare the dates of these documents to when they were produced.

By its late production, Applied denied Tyco the opportunity to take fact discovery on these documents. For example, Applied has denied Tyco the opportunity to examine Applied's

4

witnesses regarding these documents.  Even more importantly, Applied has denied Tyco the opportunity to discover how many other trocar devices Applied considered and rejected before arriving at these trocars.  This Court should reject Applied's attempt to use a selective, untimely production to bolster its damages theories.  *See, e.g.*, *Monsanto Co. v. Bayer Bioscience N.V.*, No. 4:00-CV-01915, 2005 WL 5989796, at *18-19, 25 (E.D. Mo. Oct. 28, 2005) (prohibiting reliance on *any* evidence related to an alleged non-infringing alternative if *all* related discovery was not produced).

Applied's late production also prejudiced Tyco's ability to prepare its expert reports.  For example, by producing 2,107 pages of documents after Tyco's damages expert served his expert report, Applied denied Mr. Magee any chance to assess these documents.

### B.  Applied's Late Production Cannot Be Cured With A Continuance

As this Court correctly noted, "[t]rial is less than four months away, and a continuance is not available to cure any prejudice Tyco might have suffered."  (D.I. 127)  The parties have already submitted opening and rebuttal expert reports.  A continuance would jeopardize the case schedule, which has the rescheduled trial now set for November 2008, from the original December 2007 date.  (D.I. 35; 101)  A continuance would also delay Tyco's opportunity to obtain injunctive relief and would increase costs to both parties.  As this Court explained in *Texas Instruments*, "[s]imply put, there is no reason to force a continuance upon [Plaintiff] in an effort to cure [Defendant's] misconduct."  *Tex. Instruments, Inc. v. Hyundai Elecs. Indus., Co.*, 50 F. Supp. 2d 619, 630 n.21 (E.D. Tex. 1999).

Permitting Applied to rely on these documents and proffer corresponding expert testimony would reward Applied for violating this Court's scheduling order.  *See Barrett*, 95 F.3d at 381 ("a continuance does not, in and of itself, deter future dilatory behavior, nor serve to

enforce local rules or court imposed scheduling orders") (citation omitted).  The Court should refuse to do so.

### C. Exclusion Would Not Bar A Vital Aspect of Applied's Case

The Court has the power to exclude even the most highly relevant documents when a party's inappropriate conduct results in prejudice to its adversary.  *See Barrett*, 95 F.3d at 381 (although exclusion of evidence allegedly damaged litigant's case, no abuse of discretion to strike evidence of disobedient litigant).  The allegation that documents are highly relevant cannot, by itself, insulate a party from sanctions for egregious conduct.  *See id.* ("the claimed importance of Plaintiffs' expert testimony merely underscores the need for Plaintiffs to have complied with the court's deadlines").  Otherwise, litigants would have an incentive to withhold highly relevant documents, safe in the belief that they could not be excluded.  *See Betzel v. State Farm Lloyds*, 480 F.3d 704, 708 (5th Cir. 2007) (even evidence that is *very* important to a party's case "cannot *singularly* override the enforcement of local rules and scheduling orders").

Applied attempts to hide behind the alleged importance of its late-produced documents.  But Applied argued in March 2008 that documents of this type were "irrelevant" and refused to produce them.  (Ex. B at 1)  Specifically, Applied argued that "[t]he new products that [it] is currently developing are obviously not covered by Tyco's infringement contentions . . . are not accused products in this case . . . ***and any documents concerning such trocars are irrelevant to Tyco's claims of infringement***."  (Ex. B (emphasis added))  Only now, when it seeks to rely upon its selective, untimely production of certain of these documents, does Applied insist that they are "highly relevant."  (D.I. 124 at 1)  The Court should not countenance such behavior.  If these documents were highly relevant, Applied should have produced them long ago.[1]

---

[1] Applied contends for the first time in its rebuttal expert reports that the redesigned trocar models described in the late-produced documents should be considered. (*See, e.g.*, Ex. C, Lynde Rebuttal Expert Report ¶¶ 56-64

6

Applied's late-produced documents and related expert testimony are ***not*** vital to its case. The late-produced documents relate to Applied's new trocar products. Since these trocar models did not exist at the relevant times for calculating a reasonable royalty in 2002 and 2004, they have minimal, if any, relevance to damages.

The import of available non-infringing alternatives to a damages calculation is undisputed. *See, e.g.*, *Riles v. Shell Exploration & Production Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002). If an accused infringer had an available, non-infringing alternative at the time of the hypothetical negotiation with the patentee, that would affect the reasonable royalty it would be willing to pay.[2] *Id.* Not surprisingly, however, an alleged non-infringing alternative that is not available at the time of the hypothetical negotiation would not affect the negotiation of a reasonable royalty. *See* 7-20 Chisum on Patents § 20.03[3][b][v] ("the date of first infringement is 'the date on which the determination of available substitutes must focus'") (citing *Panduit Corp v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1162 (6th Cir. 1978)). Applied insists that 2007-2008 information about its new trocar models must be heard by the jury because it relates to "the real world facts." (D.I. 124 at 3) But trocars that did not exist until years after the hypothetical negotiation's in 2002 and 2004 are not "real world facts."

Applied seeks to rely on *Grain Processing* to argue that a product developed many years later may be considered "available" for purposes of quantifying "damages." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1356 (Fed. Cir. 1999). Contrary to Applied's suggestion, however, the issue in *Grain Processing* was whether a non-infringing alternative was

---

(relying on late-produced documents relating to Applied's recent trocar redesign efforts)) Like the underlying documents, this proffered expert testimony should also be excluded.

[2]   Applied's damages expert, Matthew Lynde, agrees with Tyco's damages expert that the appropriate hypothetical negotiation dates are November 2002 and February 2004. (Ex. C at ¶ 14)

available for the purposes of determining lost profits, not a reasonable royalty. And in *Micro Chemical, Inc. v. Lextron, Inc.*, the Federal Circuit admonished a defendant for relying on *Grain Processing* in the reasonably royalty context. 317 F.3d 1387, 1393 (Fed. Cir. 2003) ("This case involves reasonable royalty damages, not lost profits. This court has not had occasion to address whether the holding of *Grain Processing* has applicability in the reasonable royalty context.").

To the extent Applied argues that it ***could have*** made non-infringing alternatives by the hypothetical negotiation dates, such an argument is contradicted by the facts. Applied admits that it did not initiate efforts to redesign the accused Kii 5mm seal until July 2007, and did not market an interim design of this alleged non-infringing alternative until April 24, 2008. (D.I. 124 at 2; Ex. C at ¶¶ 58, 63) Notably, Applied attempted to design around Tyco's patents as early as September 2006 by removing the ribs of the septum seal. Applied's efforts were unsuccessful, however, due to the unacceptably higher drag force created by the ribless seal. (*See* Ex. D at ¶¶ 46-48, 95-96) At the time of the negotiations in 2002 and 2004, Applied could not peer four or six years into the future to see the obstacles to a redesign it would encounter in 2006 and, according to Applied, overcome in 2008.[3]

Applied's late-produced documents and related expert testimony should be excluded.

### D.     Applied Has No Explanation For Its Dilatory Tactics

Applied has no justification for its untimely, selective production. Applied never sought to extend the fact discovery deadline and never sought permission to produce documents outside of the Court's schedule. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Applied concedes that it was in the process of

---

[3] In *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008), the Federal Circuit affirmed a reasonable royalty rate that was reduced because the infringer "probably could have designed" an acceptable alternative. This case, however, is inapposite. Applied tried to design around Tyco's patents in 2006, but failed, showing that it probably could ***not*** have designed around Tyco's patents in 2002 and 2004.

designing new trocar products *before* fact discovery closed in September 2007 (D.I. 124 at 2), yet Applied still withheld these documents until expert discovery.

Many of the documents Applied withheld are dated before September 19, 2007. (*See* Ex. A) Applied argues that it was somehow not required to produce documents related to design history files ("DHF") until the product at issue was completed or commercially available. (*See* D.I. 124 at 1-2) But there is nothing in the Federal Rules of Civil Procedure or this Court's Patent Rules that supports this position. Nor does Applied cite any case support. And for good reason. Once a relevant document exists, it becomes subject to the Federal Rule of Civil Procedure 26(e) duty to supplement. *See Duinninck Bros., Inc. v. Howe Precast, Inc.*, No. 4:06-cv-441, 2008 WL 2625851, *1 (E.D. Tex. June 27, 2008) ("should new information come to light, the Defendants are under a continuing duty of supplementation"). And even that duty to supplement "does not empower a party to circumvent court-ordered deadlines." *Providence Property & Cas. Inc. Co. v. PeopLease Corp.*, No. 4:06-cv-285, 2007 WL 3390011, *1 (E.D. Tex. Nov. 13, 2007).

Last, and perhaps most egregious, is Applied's decision to withhold documents until its experts reviewed and opined on them in their rebuttal expert reports. Applied should not be able to benefit from such tactics.[4] This is precisely the type of trial by ambush that this Court's rules and scheduling orders prohibit.

## **CONCLUSION**

For all the foregoing reasons, Tyco respectfully requests that this Court grant its Motion To Exclude Applied's Late-Produced Documents And Related Expert Testimony.

---

[4] Applied suggests that Tyco's motion "is pure gamesmanship." (D.I. 124 at 3) Surely asking this Court to enforce its Scheduling Order is not "gamesmanship." Applied should know better.

Dated:  July 14, 2008                                            Respectfully submitted,

/s/ Robert Christopher Bunt
Robert M. Parker   SBN: 15498000
Robert Christopher Bunt   SBN: 00787165
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 1114
Tyler, Texas  75702
Tel:  (903) 531-3535
Fax:  (903) 533-9687
Email: rmparker@pbatyler.com
Email: rcbunt@pbatyler.com

Claude E. Welch   SBN: 21120500
Law Office of Claude E. Welch
P.O. Box 1574
Lufkin, Texas  75902-1574
Tel:  (936) 639-3311
Fax:  (936) 639-3049
Email: welchlawoffice@consolidated.net

*Attorneys for Plaintiff Tyco Healthcare Group LP*

*Of Counsel*:
John M. Desmarais (admitted *pro hac vice*)
Peter J. Armenio (admitted *pro hac vice*)
Young J. Park (admitted *pro hac vice*)
Ellen A. Scordino (admitted *pro hac vice*)

KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York  10022
Tel:  (212) 446-4800
Fax:  (212) 446-4900
Email: jdesmarais@kirkland.com
Email: parmenio@kirkland.com
Email: ypark@kirkland.com
Email: escordino@kirkland.com

**CERTIFICATE OF SERVICE**

I hereby certify that the following counsel of record, who are deemed to have consented to electronic service are being served this 14th day of July, 2008, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ *Robert Christopher Bunt*
ROBERT CHRISTOPHER BUNT

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7(h), counsel for Tyco conferred in good faith with counsel for Applied regarding the topics contained in Tyco's Motion To Strike Late-Produced Documents and Any Related Expert Testimony in an attempt to resolve the parties' differences without court intervention. Applied has indicated that it will oppose this motion.

The conference required under Local Rule 7(h) occurred on June 26-27, 2008 by telephone. The participants of the conference were Ellen Scordino for Tyco and Sean Murray for Applied. The parties could not reach an agreement. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

/s/ *Robert Christopher Bunt*
ROBERT CHRISTOPHER BUNT