IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| TYCO HEALTHCARE GROUP LP, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 9:06-CV-151 |
| v. | § | |
| | § | |
| APPLIED MEDICAL RESOURCES CORP., | § | |
| | § | JUDGE KEITH GIBLIN |
| *Defendant*. | § | |

# SUPPLEMENTAL MEMORANDUM OPINION AND ORDER CONSTRUING CERTAIN CLAIM TERMS IN UNITED STATES PATENT NOS. 5,304,143, 5,685,854, 5,603,702, AND 5,895,377

Plaintiff Tyco Healthcare Group LP alleges that Defendant Applied Medical Resources Corporation infringes United States Patent Nos. 5,304,143 (the '143 patent), 5,685,854 (the '854 patent), 5,603,702 (the '702 patent), 5,895,377 (the '377 patent), and 5,542,931 (the '931 patent).[1] The court previously conducted a *Markman* hearing to assist it in interpreting the meaning of the claim terms in dispute and issued a Memorandum Opinion and Order construing those disputed terms. *See* Doc. # 184. Long after the *Markman* hearing had been conducted, the parties notified the court by letter that there are disagreements as to the scope of other claim terms, *see* Doc. # 169, and the court ordered additional briefing on those disputed issues. Having carefully considered the patents-in-suit, the prosecution history, and the parties' briefs, the court now makes the following findings and construes these additional disputed claim terms.

---

[1] The parties often refer to the asserted patents by the inventor's name, rather than the patent number, in their claim construction papers – i.e., the "Green patents" (the '143 and '854 patents), the "Gravener patent" (the '931 patent), and the "Smith patents" (the '702 and '377 patents). The court will refer to the patents by number, rather than inventor name, and notes that the '931 patent is not at issue in this supplemental claim construction order.

1

## I. Claim Construction Standard of Review

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S. Ct. 1384 (1996) ("*Markman II*"). "The duty of the trial judge is to determine the meaning of the claims at issue, and to instruct the jury accordingly." *Exxon Chem. Patents, Inc. v. Lubrizoil Corp.*, 64 F.3d 1553, 1555 (Fed. Cir. 1995) (citations omitted).

"'[T]he claims of the patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (citation omitted). "Because the patentee is required to 'define precisely what his invention is,' it is 'unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.'" *Phillips*, 415 F.3d at 1312 (quoting *White v. Dunbar*, 119 U.S. 47, 52 (1886)).

The words of a claim are generally given their ordinary and customary meaning. *Phillips* 415 F.3d at 1312. The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."[2] *Id.* at 1313. Analyzing "how a person of ordinary skill in the art understands a claim term" is the starting point of a proper claim construction. *Id.*

A "person of ordinary skill in the art is deemed to read the claim term not only in context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. Where a claim term has a particular

---

[2] Based on the patents at issue, the technology involved, and the parties agreement, the court previously defined one of ordinary skill in the art to be "a person with a bachelor of science degree in mechanical engineering, biomechanical engineering or biomedical engineering and having 2-5 years experience in the design or development of devices in the pertinent art, or a person without a bachelor's degree in the above disciplines but having at least 5 years experience in the design or development of devices in the pertinent art." Doc. # 184, at p. 2 n.1.

meaning in the field of art, the court must examine those sources available to the public to show what a person skilled in the art would have understood disputed claim language to mean. *Id.* at 1414. Those sources "include 'words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id.* (citation omitted).

"[T]he ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. In these instances, a general purpose dictionary may be helpful. *Id.*

However, the court emphasized the importance of the specification. "[T]he specification 'is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). A court is authorized to review extrinsic evidence, such as dictionaries, inventor testimony, and learned treaties. *Phillips*, 415 F.3d at 1317. But their use should be limited to edification purposes. *Id.* at 1319.

The intrinsic evidence – the patent specification, and, if in evidence, the prosecution history –, may clarify whether the patentee clearly intended a meaning different from the ordinary meaning, or clearly disavowed the ordinary meaning in favor of some special meaning. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-80 (Fed. Cir. 1995). Claim terms take on their ordinary and accustomed meanings unless the patentee demonstrated "clear intent" to deviate from the ordinary and accustomed meaning of a claim term by redefining the term in the patent specification. *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999).

The "'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *Phillips*, 415 F.3d at 1321. However, the patentee may deviate from the plain and ordinary meaning by characterizing the invention in the prosecution history using words or expressions of manifest exclusion or restriction, representing a "clear disavowal" of claim scope. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002). It is clear that if the patentee clearly intended to be its own lexicographer, the "inventor's lexicography governs." *Phillips*, 415 F.3d at 1316.

## II. Construction of Means-Plus-Function Terms

Determining the claimed function and the corresponding structure of means-plus-function clauses are matters of claim construction. *WMS Gaming Inc., v. Int'l Game Tech.*, 184 F.3d 1339, 1347 (Fed. Cir. 1999). Claim construction of a means-plus-function limitation involves two steps. *See Medical Instrumentation and Diagnostics v. Elekta*, 344 F.3d 1205, 1210 (Fed. Cir. 2003). The court must first identify the particular claimed function, and then look to the specification and identify the corresponding structure for that function. *Id.* "Under this second step, 'structure disclosed in the specification is corresponding structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim.'" *Id.* (citations omitted). "While corresponding structure need not include all things necessary to enable the claimed invention to work, it must include all structure that actually performs the recited function." *Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005).

## III. Nature of this Proceeding

In July 2007, this court held a *Markman* hearing to address the parties' claim construction disputes, and subsequently issued a Memorandum Opinion and Order construing the disputed claim

4

terms. On September 10, 2008, Applied submitted a letter to the court seeking additional briefing on nine new claim construction issues. Doc. # 169. This court held a status conference on October 22, in which it ordered the parties to file supplemental claim construction briefs addressing issue numbers 2, 6, and 8 in Applied's September 10, 2008 letter. This memorandum opinion and order addresses those issues.

### IV. Claim Construction of '143 and '854 Patents (Issue No. 2)

The '143 and '854 patents both describe[3] a valve system for a trocar device that includes a plurality of projecting members, i.e. "fingers 78", disposed within the valve member. Upon contact with the instrument, each projecting member may be moved away from the axis of the housing to make expanding the valve aperture easier.

The court previously found that the function for certain means-plus-function terms in claims 1, 12, and 22 of the '143, as well as claims 1, 6, and 10 of the '854 patent, was either facilitating expansion of the aperture or reducing friction force on the instrument, depending on the particular asserted claim.[4] The parties agreed that the structure for all of these means-plus-function terms was

---

[3]The '854 patent is a continuation of the '143 patent, and shares the same specification.

[4]Specifically, the court found that the function for these terms is as follows: (1) '143 patent, claim 1: **"means associated with said flexible resilient valve member to facilitate expansion of said aperture to permit entry of the elongated object therethrough in sealed engagement therewith"** is **"to assist expansion of the opening in the inner wall so as to permit entry of the elongated object through the opening while maintaining its sealed contact with the valve member."** Doc. # 184, at p. 16.

(2) '143 patent, claim 1: **"means to facilitate expansion of said aperture adapted for radial displacement relative to said longitudinal axis and positioned to expand said aperture upon contact with the elongated object as the elongated object is at least partially inserted into said at least one opening of said valve body"** is **"to assist expansion of the opening and to be able to be moved in a direction away from the longitudinal axis and positions to expand the opening in the inner wall upon contact with the elongated object."**

5

"fingers 78," but now dispute whether the specification requires that "fingers 78" must be flexible enough to conform to the inner wall of the valve member in order to perform their claimed functions of "facilitating expansion" of the aperture and "reducing the friction force on the instrument."

Tyco contends that this court should construe "fingers 78" to mean "a flexible strip of plastic that can conform to the inner wall of the valve member," because the specification states that "fingers 78" must be: (1) "sufficiently flexible to conform to the shape of the inner wall," and (2) "sufficiently thin and flexible such that insertion into inner wall 30a . . . causes them to assume an initial arcuate

---

*Id.*

(3) '143 patent, claim 12: **"means engageable with the elongated object upon insertion thereof into said proximal inlet opening of said valve body member, and adapted to be radially displaced relative to a central axis defined by said valve body member to facilitate expansion of said aperture of said first valve member to facilitate entry of the object therein"** is **"to be in contact with the elongated object upon the object's insertion into the entrance opposite the sheath tube and able to be moved in a direction away from the central axis of the valve housing so as to assist expansion of the opening of the first valve, thereby assisting the entry of the elongated object."** *Id.* at p. 18.

(4) '143 patent, claim 22: **"means engageable with the elongated object upon insertion thereof into said first inlet opening and adapted to be displaced away from a central axis defined by said valve body to expand said aperture of said resilient valve member to facilitate entry of the elongated object therein"** is **"to be in contact with the elongated object upon the object's insertion into the first entrance and able to be moved in a direction away from the central axis of the valve housing so as to expand the opening of the resilient valve member, thereby assisting the entry of the elongated object."** *Id.*

(5) '854 patent, claims 1, 10: **"means responsive to the particular dimension of the instrument for expanding said orifice to the second cross-sectional area"** is **"to expand the opening to the second cross-sectional area in response to the particular size of the instrument."** *Id.* at p. 19.

(6) '854 patent, claim 6: **"means responsive to insertion of the object into the channel for reducing the friction force on the object"** is **"to reduce the friction force on an object being inserted into the channel."** *Id.*

shape . . . similar to the generally conical shape of inner wall 30a." '143 patent, col. 6, ll. 42-45, 57-59. Tyco suggests that it is the elongated shape and the ability to conform to the inner wall of the valve member that allow "fingers 78" to perform the claimed function of "facilitating expansion" of the valve aperture, and that any construction of "fingers 78" must account for that structural feature. According to Tyco, Applied's proposed construction (a "flexible finger") is overly broad and ignores the specification's actual disclosure.

Applied responds that to adopt a construction which requires the fingers to conform to the valve would import functional limitations that are not recited in the claim. According to Applied, because the asserted claims recite functions which do not include the function of conforming to the shape of the valve, structural features which are not necessary to perform the claimed functions cannot be part of the construction.

At the outset, this court emphasizes that the term "fingers 78" is not found in any of the above-quoted claims of the '143 or '854 patents. The purpose of claim construction is to construe *claim* terms, not terms which are found only in the specification. At the same time, "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1361-62 (Fed. Cir. 2008). Thus, this court can, at the request of the parties, construe a means-plus-function term which was previously agreed to or not raised, but which is now in controversy if the term affects claim scope. Therefore, the issue to be decided is whether "fingers 78" alone is the corresponding structure for the agreed functions, or whether additional descriptive terms must be added to the structure.

The '143 patent provides that:

> The first and second valve means are preferably attached to and supported by an annular ring which includes a plurality of elongated fingers which extend distally therefrom and are positioned within the first valve means in contact with the inner surface thereof. The fingers provide an interface between the first valve means and objects inserted therein and assist in spreading the opening of the first valve means for entry of the instrument. Further, the fingers distribute the force over the inner surface of the first valve means.

Col. 4: ll. 13-22 ("Summary of the Invention"). Further,

> Diaphragm 30 is mounted to dual flanged circular ring 32 as shown in Fig. 4 and the entire assembly is mounted to the annular partition 26 as shown. *Fingers 78 are positioned within diaphragm inner wall 30a and are sufficiently flexible to conform to the shape of the inner wall while providing some degree of stability to the inner wall. Fingers 78 also assist in spreading inner wall 30a to expand aperature 34 when an instrument is inserted by distributing the spreading force more evenly.* In addition to facilitating expansion of aperature 34 to conform to instrument 76, fingers 78 minimize the risk of damage to elastomeric inner wall 30a, e.g. puncture thereof, by providing an interface between the instrument 76 and the inner wall. Stabilizing device 31 is fabricated of a suitable flexible plastic material such as polyester, polypropylene, etc. and fingers 78 are preferably formed integral with dual flanged ring 32. *Further, fingers 78 are sufficiently thin and flexible such that insertion into the inner wall 30a of diaphragm 30 causes them to assume an initial arcuate shape as shown in Figs. 2 and 4, similar to the generally conical shape of inner wall 30a.*

Col 6, ll. 42-61 ("Detailed Description of the Preferred Embodiments") (emphasis added).

In order to qualify as corresponding structure, the structure must not only perform the claimed function, but the specification must clearly associate the structure with the performance of the function. *Medical Instrumentation and Diagnostics*, 344 F.3d at 1210. Here, the limitations Tyco seeks to import – i.e., that "fingers 78" must be flexible strips of plastic that can conform to the inner wall of the valve member – are not clearly associated with *both* functions of expanding aperture and reducing friction on the instrument.

First, the above cited passage from col. 6, ll. 42-61 of the '143 patent only mentions the main characteristic of structure "fingers 78" Tyco wants to include – conformation to the inner wall of the

8

valve member, stating that the fingers are sufficiently flexible to conform to the shape of the inner wall. The specification goes on to disclose that the fingers "also" assist in spreading the inner wall to facilitate expansion of the aperture. The specification does not clearly link or associate the "conforming" element to the expansion of the aperture. The specification doesn't even suggest that the "conforming" element is linked to the function of reducing force on the instrument. Therefore, this court declines to add this term to the court's previous construction.

In addition, the parties agreed that "fingers 78" was the structure that performed *all* of the functions for these means-plus-function claim terms. Again, nowhere does the specification state that this characteristic of "fingers 78" performs the other function of reducing friction on the instrument.

While the parties agree that "fingers 78" are flexible, there is no basis for inclusion of the limitation that the fingers be plastic. Plastic is mentioned in the '143 patent in connection with portions of the valve assembly 12, col. 5, ll. 27-34; the annular partition 26, col. 5, ll. 55-57; stabilizing device 31, col. 6, ll. 54-55; and cannula 22, col. 7, ll. 27-28, only. While "fingers 78" are described as extending distally from dual flanged circular ribbed ring 32 (from which stabilizing device 31 is formed), there is no requirement in the specification that "fingers 78" be plastic at all, much less that the plastic is necessary to perform the stated functions. Finally, Tyco's suggestion that the "fingers 78" must be strips is similarly unsupported in the specification. In fact, the word "strip" is never mentioned in the specification of these patents at all.

The court will therefore decline to add additional descriptive terms to it's determination of the structure required to perform the functions in these claim. The structure remains **"fingers 78 and equivalents thereof."**

## V. Claim Construction of the '702 and '377 Patents (Issue Nos. 6 and 8)

The '702 and '377 patents describe a valve assembly for a trocar device that includes guard members which include at least a first substantially rigid portion and a second portion having less rigidity than the first portion.[5]

A.  Issue No. 6: Claim 6 of the '702 Patent

Applied's letter of September 10, 2008 raises the following issues with respect to claim 6: (1) must each "guard member" must contact both the instrument and the valve; (2) whether the two portions of each guard member must be discrete and specifically identifiable; and (3) whether the rigidity between the two portions of the guard member must be perceptible to a surgeon. The parties subsequently informed the court that only the first two issues need be resolved. *See* Doc. # 185, at p. 16.

At the outset, the court emphasizes that the parties have not identified an actual claim term to be construed, nor have they provided proposed constructions for any disputed claim term. In essence, the parties are asking the court to review a patent claim and answer a "yes or no" question as to whether each and every guard member must contact the instrument and the valve member. As already noted, it is the role of the court to construe disputed claim terms; what the court is not required to do by *Markman* and its progeny – including *O2 Micro* – is to answer multiple choice or true/false questions proposed by the parties, unless the dispute implicates claim scope. It is the province of the jury to analyze the properly construed claims and determine whether or not all claim elements – or their equivalents – are present in an accused device.

---

[5]The '377 patent is a continuation of the '702 patent, and shares the same specification

However, despite the parties' failure to identify what claim term must be construed, it would be improper to permit the parties to submit evidence – and the jury to make a determination – as to what language in the claim terms mean. Because this arguably goes to claim scope, the court provides the following guidance to the parties regarding these claims.

1. *Must each guard member contact both the instrument and the valve?*

Claim 6 of the '702 patent recites a valve assembly which comprises in part:

> c) a plurality of guard members disposed within the seal member and concentrically arranged about a central longitudinal axis defined by the valve housing and positioned to engage the elongated object upon insertion of the elongated object within the valve housing, each guard member adapted to be radially displaced during introduction of the elongated object within the valve assembly to engage portions of the valve member adjacent, but proximal to, the aperture to expand the aperture, each guard member having an end portion of less rigidity than the remaining portions of the guard member, the end portion dimensioned to reduce the force required to advance the elongated object through the valve housing.[6]

Tyco suggests that this claim requires that *each* guard member that contacts the inserted instrument also contact portions of the valve member, noting that the specification only discloses guard members that contact both the instrument and the valve member.

Applied disagrees, arguing that since the claim recites a "plurality of guard members" – meaning at least two guard members – the claim require that two or more, and not each, guard member contact both the instrument and the valve. Applied points out that the portion of the specification Tyco relies on is a preferred embodiment, and that there is nothing in the patents which indicate this limitation is required. Further, Applied suggests that because claim 6 utilizes the transitional phrase "comprising," which is an "open" transition word, it is irrelevant whether an

---

[6]Claim 1 of the '702 patent has a similar clause. Although Applied's September 10 letter brief identified both claims 1 and 6 as involving this dispute, the parties' briefs discuss only claim 6. The court will not address issues the parties do not indicate remain in dispute, but notes that the analysis for claim 1 is likely to be similar to that of claim 6.

accused device contains additional guard members that do not contact both the instrument and the valve, so long as the device contains two such guard members.

The court begins with the claim language itself. Although claim 6 begins with the phrase "a plurality of guard members," it then goes on to state that "each guard member" is "adapted to be radially displaced during introduction of the elongated object within the valve assembly to engage portions of the valve member[.]" Applied is correct that, as a general rule, "plurality" means two or more. *See, e.g., Cybersettle, Inc. v. Nat'l Arbitration Forum, Inc.*, 243 Fed. App'x 603, 606 (Fed. Cir. 2007) (unpublished) ("Cybersettle agreed at oral argument that the claim term 'plurality' refers to two or more of something. That definition is consistent with the well understood meaning of the term 'plurality' both in general and in patent parlance."). However, the fact that the claim refers to a plurality of guard members – i.e., two or more – means only that two or more guard members may be present in the claimed invention. Because the claim later specifies that each guard member which is present – which, again, can be two or more ("plurality") – must touch the instrument, Applied's construction cannot be correct. "Plurality" refers to the number of guard members present, while "each" refers to what each guard member present must do.

Further support for this conclusion is found in the specification. Applied is correct that most of the portions Tyco points to are preferred embodiments. The court recognizes that only where the specification uses language of requirement, rather than preference, will the specification describe an essential element of the claim rather than merely a preferred embodiment. *Anderson Corp. v. Fiber Composites LLC*, 474 F.3d 1361, 1372-73 (Fed. Cir. 2007); *Honeywell Int'l Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006). However, the court need not decide whether the specification uses language of preference or requirement here, in light of the statement in the "Summary" section

that one function of the guard member is to provide an interface between the guard member and the seal member to prevent the portions of the seal member that define the aperature from engaging with the elongated object. Col. 3, ll. 28-33. It would be difficult, if not impossible, for a guard member to perform this function without contacting both the instrument and the valve member.

The court therefore concludes that the each guard member present – where the number of guard members present is a "plurality" – must contact both the instrument and the valve.[7]

2. *Must each guard member have at least two discrete portions and thus specifically identifiable?*

As formulated in Applied's September 10 letter brief, the second issue is whether the guard member of claims 1 and 6 of the '702 patent "must be "discrete and thus specifically identifiable." Tyco discusses this issue with respect to claim 6 of the '702 patent and claim 6 of the '355 patent, the latter of which was not indicated to the court as actually being in dispute. Applied's responsive brief only concerns claim 6 of the '702 patent  Because Tyco raises the issue with respect to both patents – and the issue again arguably goes to claim scope – the court will look at this question in the context of claim 6 of both the '702 and '377 patents.

Claim 6 of the '702 patent recites the limitation of "each guard member having an end portion of less rigidity than the remaining portion of the guard member," while claim 6 of the '377 patent contains the limitation of "the end portions of the guard members being substantially flexible relative to the remaining portions of the guard members."

---

[7]The court notes that Applied's argument regarding the open transitional term "comprising" does not go to claim construction. Rather, Applied's suggestion that it is irrelevant whether an accused device contains additional guard members that do not contact both the instrument and the valve so long as it has a plurality – i.e., at least two – guard members that do contact both the instrument and the valve, is more appropriate for resolution at trial, when the jury will have the opportunity to compare the properly construed claim to the accused devices.

Tyco suggests that both of these claims require that each guard member have an end portion that is "readily identifiable" from the remaining portion(s) of the guard member, and suggests that these phrases should both be construed as "each guard member having an end portion that is readily identifiable from the remaining portions of the guard member and is more flexible that those remaining portions." According to Tyco, claim 6 of both patents distinguish the end portions of the guard member from the remaining portions such that the end portion is structurally distinct and readily identifiable. Applied counters that Tyco is simply re-writing Claim 6 to insert the words "readily identifiable" into the claims, arguing merely because a patent claim refers to different "portions" does not necessarily mean that the portions must be discrete or readily identifiable, especially when such a construction is not supported by the specification.

The court previously construed the phrase "each guard member having an end portion of less rigidity than the remaining portions of the guard member," which is found in claim 6 of the '702 patent, to mean that "each guard member has an end portion that is less resistant to a change in shape than the remaining portions of the same guard member." Doc. # 184, pp. 27-29. Similarly, the court has also construed the phrase, found in claim 6 of the '377 patent, "the end portions of the guard members being substantially flexible relative to the remaining portions of the guard members to effectively minimize force required to advance the elongated object through the guard members" to mean "the end portions of the guard members being substantially more flexible than the remaining portions of the guard members so as to effectively reduce the force required to insert the elongated object." *Id.* at pp. 29-31.

The specification repeatedly discuss the fact that the guard members have a first substantially rigid portion and a second rigid portion having less rigidity than the first portion. *See, e.g.*, '702

patent, Abstract ("The guard member includes at least a first substantially rigid portion adapted to be displaced relative to the longitudinal axis to facilitate expansion of the aperture of the seal member upon entry of the object therein and a second portion having less rigidity than the first portion of the guard member. . . . "); Summary at col. 3, ll. 23-29. At the same time, the patents make it clear that the fact that the guard member has two different portions does not mean that these portions have to be "readily identifiable" or "discreet." *See, e.g.*, Summary at col. 3, ll. 35-40 (stating that the "preferred" guard member is a "monolithically formed single piece unit wherein the first portion of the guard member defines a cross-sectional dimension which is greater than the cross-sectional dimension of the second portion, thus providing the more rigid characteristic to the first portion.").[8]

Nothing in the claims or specification requires the portions to be "readily identifiable" or "discrete," and nowhere in the specification does the inventor limit his invention to devices where the guard members have guard portion that are "readily identifiable" or "discrete." Neither phrase is even present in either specification. Although figures such as Fig. 8A show discrete portions, this court cannot import a limitation from a preferred embodiment into a claim unless the specification uses the language of requirement, rather than preference. Because the specification contemplates a scenario in which even the preferred embodiment of a guard member is a single unit, importing the limitation Tyco suggests would be incorrect. The answer to the question posed in Issue No. 6(b) is no, and the court's previous construction for the terms at issue remain in place.

B.    Issue No. 8: Claim 6 of the '377 Patent

Claim 6 of the '377 patent recites a valve assembly which comprises in part a plurality of

---

[8]The court recognizes this is a preferred embodiment, and uses it only to illustrate the point that the specification contemplates a scenario in which a guard member with two portions is a single piece unit, monolithically formed, rather than .

15

guard members," the end portions of the guard members being substantially flexible relative to the remaining portions of the guard members to effectively minimize force required to advance the elongated object through the guard members."

The court has already construed this term. *See* Doc. # 184, at p. 31. Recognizing that the dispute between the parties at the *Markman* stage centered around the issue of whether the force required to insert the object was to be reduced to "the minimum level possible," the court construed the term to mean "the end portions of the guard members being substantially more flexible than the remaining portions of the guard members so as to effectively reduce the force required to insert the elongated object."

The issue that now arises is whether this claim term requires the minimization of force to be caused by the relative flexibility of the end portion (as Applied contends), or by the guard member in its entirety (as Tyco suggests). Applied contends that it is not too late for the court to address this issue because the dispute did not arise until long after the *Markman,* when Tyco filed an expert rebuttal report that presupposed the guard members in their entirely must reduce the force. According to Applied, the claim language makes it clear that the subject of the clause is the end members, and that the clause explicitly contrasts the flexibility of the end portions with the lesser flexibility of the remaining portions of the guard members.

Tyco's position is that it is too late for Applied to modify its proposed construction. According to Tyco, this dispute does not go to claim scope under *O2 Micro* because Applied is essentially asking the court to determine a factual issue – i.e., to construe a claim in order to exclude the accused device – and that it is for the fact-finder to determine whether the accused guard member: (1) has an end portion that is more flexible relative to the remaining portions of the same guard

member; and (2) is sufficiently flexible to reduce the force required to advance the instrument through the guard members. The court disagrees with Tyco, because the narrow issue presented by Applied goes directly to the scope of claim 6. In essence, Applied is merely asking the court to clarify its earlier definition based on a claim construction dispute that subsequently developed based on the parties' expert reports.

The starting point is the claim language itself, which states that: (1) the claimed valve assembly comprises a plurality of guard members; (2) each guard member has an end portion; and (3) each end portion is "substantially flexible" in relation to the rest of the guard member "to effectively minimize the force that is required to advance the elongated object through the guard members." The plain language of claim 6 therefore makes it clear that the minimization of force is due to the flexibility of the guard member's end portion relative to the remainder of the guard member. Tyco's reading is strained, and would essentially read a large portion of the language out of claim 6.

The specification further supports the conclusion that a portion of the guard member, rather than the entire guard member, is what reduces the force. In the "Summary," the patentees state that the guard member includes at least "a first substantially rigid portion" that will facilitate expansion of the seal member's aperture and a "second portion having less rigidity than the first portion of the guard member to enhance passage of the elongated object through the valve body." '377 patent, col. 3, ll. 26-32. Thus, the rigid – less flexible – first portion will expand the aperture and the less rigid – more flexible – second portion will facilitate passage of the object through the valve body: in other words, two separate portions of the guard member, having two different flexibilities and serving two different functions. In the preferred embodiment (again, described in the "Summary" section), the

17

less rigid second portion is the end portion, which "reduces the force required to advance the elongated object through the valve housing." '377 patent, col. 3, ll. 58-62. Again, the court is mindful of importing limitations into the claims from the specification, and recognizes that even a specification that describes a single embodiment to enable the invention does not limit broader claim language to that embodiment absent a "clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Abbott Labs. v. Sandoz, Inc.*, – F.3d –, 2009 WL 1371410 at *4 (Fed. Cir. May 18, 2009) (internal quotation omitted). At the same time, the specification clearly contemplates – in the "Summary" section, before the preferred embodiment is stated – that the guard member be comprised of at least two portions with different flexibilities or rigidities. It would make little sense to adopt a construction where the entire guard member reduced the force, because the specification describes a guard member with at least two distinct portions, having different flexibilities, and therefore different impacts on the force required to advance an object through the valve housing.

Thus, the phrase "the end portions of the guard members being substantially flexible relative to the remaining portions of the guard members to effectively minimize force" means just that: the end portion of the guard member is substantially flexible, relative the rest of the guard member, in such a way that reduces the force required to advance an elongated object through the valve housing. There is no support in the claims or specification for Tyco's contention that the reduction in force can be caused simply by the presence of *entire* guard member, when the claim specifically utilizes the phrase "end portion" to describe what reduces the force.[9]

---

[9]The court notes that Applied's September 10 letter raises an almost identical issue with respect to claim 6 of the '702 patent (Issue No. 5), which was briefed in the parties' infringement summary judgment papers. For the reasons discussed above, the court finds that the phrase "end

## VI. Conclusion

The jury shall be instructed in accordance with the court's interpretation of the disputed claim terms in the '143, '854, '702, and '377 patents.

**SIGNED this the 30th day of June, 2009.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE

---

portion dimensioned to reduce the force " also means just that: the end portion of the guard member is dimensioned in a way that reduces the force required to advance an elongated object through the valve housing.